UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


UNITED STATES OF AMERICA,          :

               PLAINTIFF,          :

       V.          :          CASE NO. 2:09-CR-085
                          JUDGE GRAHAM
RICHARD BISTLINE,          :

             DEFENDANT.          :


## UNITED STATES SENTENCING MEMORANDUM FOR RE-SENTENCING HEARING

The United States files its sentencing memorandum herein to address the facts and law in support of a sentence of imprisonment in this child pornography possession case that is before the Court for re-sentencing.  The United States submits that a balance of the factors under § 3553(a) do not support a sentence significantly below the guidelines in this case, nor can a sentence that significantly departs be justified as a departure or variance.

Defendant Bistline's guidelines are at an offense level 26, criminal history category I resulting in a sentencing range of 63 to 78 months.  Probation originally recommended a sentence of 24 months.  No additions or amendments to the PSR are before the Court and it is assumed that probation has not changed its recommendation.  Since the original sentencing; however,

1

defendant Bistline has been supervised by probation and a report of that supervision has been filed with the Court.  Defense counsel still contends, as he did in the original sentencing, that no term of imprisonment is appropriate, but proposes some additional terms of supervised release.  Probation's recommended sentence is only 60% to 70% of the guideline sentence and if based on a downward departure or variance the recommendation would require a 9 to 11 level departure or variance.  Defendant wants a 100% reduction of the guideline imprisonment sentence.  A review of the § 3553(a) factors in conjunction with the facts of this case do not support a sentence that does not include a sentence of imprisonment and the United States recommends a five year sentence followed by a five year term of supervised release with a condition of no unsupervised contact with any minors, including relatives.

## I.  Procedural Facts of the Case.

In April, 2009, defendant Bistline entered a plea of guilty to an information charging him with one count of knowing possession of child pornography carrying a maximum sentence of 10 years, and no minimum sentence.  A presentence report ("PSR") was prepared, which determined that, under U.S.S.G. § 2G2.2, the base offense level for the crime was 18 and that the following enhancements were applicable: 2 points for use of a computer; 2 points for "other distribution," 2 points for possession of

2

illegal images of prepubescent children, and 5 points for possession of more than 600 images. Importantly, Defendant also agreed in his plea agreement to that guideline level and those points. Defendant has a criminal history category of I and a final offense level, after receiving 3 points for acceptance of responsibility, of 26. The resulting guideline range is 63 to 78 months.[1]

At the original sentencing hearing in November 2009, the district court orally sentenced Bistline to one day of imprisonment, ten years of supervised release with 30 days of home confinement, no fine, and a $ 100 special assessment. (Sent. Hearing, 11/12/09 pgs. 33 and 34; hereinafter "Sent. Tr. I".) One of the government's many objections to the sentence was the court's acceptance and endorsement of a last minute defense argument regarding alleged defects in the guideline for possession of child pornography without any chance for the government to brief the issues. The court continued the sentencing hearing to allow that briefing.

At the second sentencing hearing in January, 2010, the court imposed the same sentence without 30 days of home confinement since some period of home confinement had occurred on pre-trial release. The government stated its detailed objections to the

---

[1]Note that without any of these enhancements, defendants range would be 18 to 24 months.

3

sentence and appealed the judgment.  On appeal, the case was
remanded by the Sixth Circuit for re-sentencing in conformity
with its decision.  Defendant sought re-hearing en banc, but that
was denied.  Defendant then petitioned for certiorari to the
Supreme Court.  That petition was also denied.  All appropriate
mandates issued and the stay of re-sentencing was dissolved.  The
case is now before this Court for re-sentencing.

## II. Facts Before the Court

The original facts as updated with new information include
the following:

### A. Agents in Florida download child pornography from Bistline's computer.

In September, 2007, an agent with the Brevard County Florida
Sheriff's Office, while serving on a task force investigating
on-line crimes against children with the Bureau of Immigration
and Customs Enforcement, launched the peer to peer program
"LimeWire" and conducted a search using the names of known child
pornography images.  Arrgn. Tr. at 20.  LimeWire is a free
program for the sharing of large files among Internet users
world-wide. (Id.)  While it was originally used for the sharing
of music files, it is now commonly used to share images and
videos, particularly of child pornography.  (Id.)  In response to
the officer's query, LimeWire located, and the officer
downloaded, twelve child pornographic image files, including some
known victims, from what was later determined to be Bistline's

4

computer in Mount Vernon, Ohio. (Id.; PSR ¶ 11.)  In order to be downloaded by the officer using LimeWire, these images were in Bistline's computer's "shared files" folder making them available to LimeWire users worldwide. (Id.)

**B.  A search warrant was executed at Bistline's residence.**

In October 2007, the Knox County Sheriff's Office obtained a search warrant, based on the Florida investigation, for the Bistline residence and for the computers therein.  (Arrgn. Tr. at 21.)  At the time the search warrant was executed, Bistline was outside mowing his lawn.  (Id.)  After Bistline viewed the search warrant, he stated to the agent that he had pornography on his computer, that he left the computer on full-time, and that he had LimeWire.  (Id. at 21-22.)  He also said that his wife was in the shower, that he did not want his wife to "know what was going on," and that he wanted to be the one to tell her about the warrant.  (Id.)  Mr. Bistline made no other statement to law enforcement at any time through the present.

**C.  Bistline has been a teacher, is a parent and a grandparent, and has frequently changed jobs.**

At the time of the search,  Bistline was 65 years old, retired, and had been married to his wife for 42 years.  (PSR ¶ 38.)  The Bistlines have four adult children, and "a number of grandchildren." (Id.; Sent. Tr. I at 8-9.)  They are, according to Bistline, a close-knit family.  (R. 16, Def's Sent. Memo. I at

4.)  Yet, defendant Bistline turned to child pornography instead of healthier (and legal) outlets when his and his wife's health declined.  (See, Dr. Tennenbaum's report in Def's Sealed App. Four.)

Bistline himself had a normal upbringing in an intact family with four siblings.  (PSR  ¶¶ 37, 38.)  Surprisingly, however, he maintained little or no contact with his brothers and only telephone contact with his sisters.  (Id.)  Bistline had a good relationship with both of his parents although his mother was reportedly not very affectionate.  (Id.)  After obtaining a teaching degree, Bistline taught at three different high schools in Michigan over the course of the next seven years.  (Id. at ¶ 53.)  For the following sixteen years, he self-reported holding a variety of jobs in sales, tree service work, and as a self-employed electrician."  (Id.)  From 1990 through 2004, he worked first for the Ohio Department of Transportation, then for a private company as a safety director/trainer.  (Id. at ¶ 52.)  He was fired from each job, reporting, although unconfirmed, that one termination was "a result of his performance related to paperwork" and the other was due to a dispute with the business owner. (Id.)

### D.   Bistline and his wife have health problems.

Bistline has had hypertension since 1990 and had strokes in 1995 and 2005. (Id. at ¶ 45.)  In addition to some minor

surgeries over the years, he had a benign brain tumor removed twelve years ago, resulting in some facial drooping and some hearing loss.  (Id.; R. 16, Def's Sent. Memo. I[2] at 3.)  He claimed cardiac problems, but this was not fully or reliably documented in the PSR.  (R. 16, Def's Sent. Memo. I at 3.)  However, Defendant has recently supplied medical records for the re-sentencing that indicate that he had a heart attack a year ago and had a stent inserted to open a cardiac artery.  (Def's Re-sent. Memo., Sealed App. Four.)  Although having no known mental health issues, he had been referred to anger management group counseling by a former employer.  (PSR ¶ 46.)  He has a pacemaker, "deep venous thrombosis of his lower extremity" and takes medications to prevent future heart disease and to prevent further blood clots.  (Id. at 8.)  He still drives and provides care for his spouse.  (Def's Re-sent. Memo and Sealed App. Four, Letter of Krista Bistline.)

   Bistline's wife had chemotherapy some 14 years ago that left her with numbness in her fingers, poor circulation and some mental confusion.  (Id. ¶ 40; R. 21, Psych. Eval., Sealed App. at 12.)  At the time of the PSR, she had wound care issues and was on antibiotics, relying on her husband at that time for some help with everyday tasks.  (Id. at ¶¶40, 44.)  There are no current

---

   [2]Defendant's current sentencing memorandum will be referred to herein as "Re-Sent. Memo."

7

wound care issues, but defendant has also submitted some partial sealed medical records for his spouse indicating that she has had surgery and chemotherapy for a new cancer in 2010.  That cancer treatment was completed some time ago and appears to have been successful according to those records.  Her daughter explains in a letter to the court that her mother suffers some confusion, numbness in her hands and feet and that she fell recently going down the basement stairs to do laundry and hit her head and has had several falls in the bathroom.  (Def's. Sealed App. Four.)

**E.  Bistline's search for and receipt of child pornography.**

Bistline told the probation officer that he initially used LimeWire to download music, then "in 2005 or 2006, he typed in 'Lolita' on his computer [and]... was able to download images of child pornography." (PSR ¶ 18.)  He admitted that from that point forward, he had downloaded and viewed child pornography on more than one occasion through the date of the search warrant in October 2007. (Id.)  He further conceded that he possessed child pornography of pre-pubescent minors, that he had gotten it with the LimeWire program, and that he eventually knew that he was sharing it with others on LimeWire.  (Id.)

The desktop computer taken from the Bistline home contained approximately 305 child pornography images and 56 child pornography videos.  (Arrgn. Tr. at 21.)  Images of at least six known victims from outside Ohio were identified.  (Id.)  The

images and videos were almost all found in the folder on the computer named "Documents and Settings\Richard\Shared."  (Id.)

The images and videos, according to the PSR, included primarily young girls between the ages of 8 and 10 either displaying the anus or vagina while in sexually explicit positions or involving sexually explicit contact with adults. (PSR  ¶ 14.)  In fact, the images and movies include pre-pubescent girls being raped and sexually molested by adults. (Gov't Ex. 1) One of the videos included 14 or more victims:  two blindfolded, all very young (toddlers and pre-school age), and each one was sexually abused by an adult male ejaculating in the child's face or mouth.  (Id.) Many videos involved sexually explicit acts between young girls.  (Id.)  A very few videos were less than a minute long, but many were three minutes long and longer.  (Id.)  Several were 15 to 20 minutes long.  (Id.)  The very explicit names of the images and videos are included on Sealed Government Exhibit 1 with the digital images and in a print out.  (Id.; Sent. Tr. II at 5-6.)   In most cases, the material in the video matches the descriptive name.  (Gov't Ex. 1.)  A frequent part of the file name is the term "pthc" which stands for "pre-teen hard-core" material.  (Id.)

### F.  The court ordered a psychological evaluation, during which Bistline disclosed how and why he sought child pornography.

After the first sentencing hearing, the court sua sponte

ordered Bistline to undergo a psychological examination. (R. 18.) The psychologist was asked to determine Bistline's "mental condition, specifically whether defendant poses any physical danger to children; [and] whether he is likely to repeat the offense... in the future;..." (Def's Sealed App. Four, 2-7) The evaluator was asked to look for underlying psychological problems that led to commission of the offense. The court sought treatment proposals and suggestions for restrictions for Bistline's supervised release. (Id.)

In addition to meeting with Bistline, the psychologist reviewed only the presentence report and Bistline's sentencing memorandum, but did not seek or review any other materials. The government was not asked to describe the child pornography material nor did the psychologist seek to review any sentencing memoranda from the government. (Id.) Two tests were administered by the psychologist, but neither was explained, nor were actual results included. No testimony from the psychologist was presented by either party.

With the psychologist, for the first time, Bistline was forthcoming regarding the offense conduct, disclosing that his adult son showed him how to download music using LimeWire, stating "I didn't know it was illegal." (Id.) When asked how he transitioned from music to child pornography, he explained that his son showed him that he could obtain pornography on LimeWire.

10

Bistline eventually searched for "Lolita," stating that it was a
1955 movie, that Lolita referred to "a young, tempting
temptress."  When "lots of things" showed up, Bistline typed in
other terms from the results, including "pthc," which he learned
meant "pre-teen hard core."  (Id. at 2-4.)  He claimed that he
had never molested a child, but that he preferred child
pornography to adult pornography.  Explaining that the adults
looked "junky," Bistline felt, however, that some of the children
looked happy participating "in what they were doing."  (Id.)

When asked if he was using any of the pornography for sexual
purposes, Bistline disclosed he couldn't have sex due to
medication and health issues.  (Id. at 3.)  Then he said: "Did I
get any rise? I appreciate it, envied young people: they could be
active, but some of it I didn't like at all because I don't like
to see children hurt..."  (Id.)  Asked to explain further,
Bistline stated:

> Confused.  Bored.  Exploring.  Probably got caught up
> in it.  I love many things....You look on the computer,
> you punch a button, you see what you got.  It's like a
> lottery.  Maybe a desire to be younger; we used to have
> good sex, the wife and I, then bam!  Nothing.  Sixty
> years old!  You little devils!  I felt envious.

(Id.)  Bistline explained that the impact of his medical
conditions meant that his whole life had changed, that he was
bored and that he would drink a little wine in the afternoons,
then "his fingers would go wild" on the computer.  (Id.) He
stated that at first he didn't know it was illegal because there

was nothing on the site telling him so; but that he later found out that it was.  (Id.)

While the psychologist found that Bistline was severely depressed, that finding appeared to be based on his legal situation, since it cited Bistline's losing of self-respect and having "to stand before a judge."  (Id. at 4.)  Without reviewing any medical records, the evaluation blamed health issues and emotional deterioration as an excuse for Bistline's crime.  (Id. at 1, 5-6.)  Based solely on an unexplained test, Bistline was declared to be at low risk of re-offending.  (Id.)

### G.  Additional Material not in the PSI.

Defendant's Re-sentencing Memorandum argues a number of 'facts' before the Court only by way of letters to the Court from family members.  These include information about Bistline's alleged understanding of the Limewire program (citing to a letter from Bistline's son to the Court) and the alleged inability of any of Bistline's adult children to provide any level of care for their mother if defendant serves any term of imprisonment (citing a letter from Krista Bistline.)  It also includes information to which the government (and presumably the Court) are not privy, including, for example, specific subjects covered in defendant's required sex offender treatment program and the specific questions in a polygraph exam.  (See, Re-sent. Memo. at 17-18.)

12

### III.  **The § 3553 Factors**

Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" *to comply with the purposes set forth in paragraph two*.  That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs the Court – in determining the particular sentence to impose – to consider the following seven factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.

### A.  **The United States' position at the original sentencing.**

The United States based its sentencing recommendation of a sentence within the guidelines on a point by point analysis of

the § 3553(a) factors and on the fact that the majority of defendants charged with possession of child pornography were receiving guidelines sentences despite some courts' criticism of the specific guideline.  The United States incorporates its oral and written arguments from the first sentencing hearings into this current memorandum by reference. (U.S. Sealed Sent. Memo. I, R. 15, Supp. Sent. Memo., R. 19, and Sent Hearing Transcripts I and II, R. 17 and R. 25.)

**B.  The United States recommendation at re-sentencing.**

There are some changes in the facts before the Court including worsening health for both defendant and his spouse, defendant's completion of a sex offender treatment program and defendant's almost three years of supervised release.  The United States seeks a sentence of 5 years imprisonment and 5 years of supervised release with no unsupervised contact with minors and standard restrictions on computer use.  This is a sentence three months below the lower end of the guidelines range.  The reasons for the government's recommendations are as follows:

**1.  Nature and Circumstances of the Offense**

In one respect, Defendant's offense is certainly within the heartland of a typical possession offense in the age of computers.  He used his computer to obtain child pornography and maintained his collection, garnered over several years, on that computer in his home.  Defendant Bistline, however, also used a

14

peer-to-peer file sharing program designed to share large files such as movies and music.  This sharing takes place anonymously and is worldwide.  When a user seeks material using LimeWire or similar peer-to-peer file sharing program, the program essentially works harder in casting a net to find the requested item if the user is also sharing his own files.  The more files the user is sharing, the more efficient and far-ranging are his search results.  Every time a peer-to-peer child pornography possessor is identified and prosecuted, his cache of child pornography is  forever removed from the Internet.  Bistline's guideline is 12 months higher than a straight possession case because of this type of non-monetary distribution.

Defendant goes to great lengths to emphasize the default nature of the shared files folder, but he admitted to the psychologist that he did eventually understand that the files were being shared.  Importantly, he agreed to an additional two points under the guidelines for his distribution.  Even if the court totally discounts the two additional points for distribution, defendant's guideline range at an offense level 24 would still be 51 to 63 months.  The government's recommended sentence is within this lower range.

Also, the child pornography possessed by defendant Bistline involved a number of videos or movie files.  Most movie files were three minutes of longer and some were 15 to 20 minutes long.

15

The comments to the special offense characteristic regarding videos directs that: "If the length of the visual depiction is substantially more than 5 minutes, an upward departure may be warranted."  2G2.2(Commentary 4.(B)(ii).

Many of the images and videos (Gov't Ex. 1) have very explicit names matching the content.  The content includes rape of pre-pubescent girls and many include sexual contact between adult males and young girls from toddler age to 12 or 13 year olds.  Many involved sexually explicit activity between young girls.  One 20 minute video involved bestiality.

The length of the material and the type of child pornography possessed are not referenced in the probation officer's recommendation for departures, nor in the defendant's quite lengthy Re-sentencing Memorandum.  The government agrees that the age of the children and the number of items are accounted for in the guideline range, but that the type of material possessed (hard core) and the length of the movies is not captured.  There is a major difference between a still image of a nude child in a sexy pose and a long video depicting the rape or attempted rape of a toddler.  The type of material must account for an upward movement within the guideline range for the 'nature and circumstances of the offense' causing this factor to indicate a sentence in this case in the mid-range of the guidelines.

Anyone forced to review the videos this defendant sought

16

would find fantastic and horrifying defendant's statement to Dr. Tennenbaum that "I couldn't figure out why it's illegal, there was nothing telling me, no pop-ups; if you go to a woodworker's website and say something nasty, they'll cut you off." (Def's Sealed App. Four at 3.)  Almost every modern society has made child pornography illegal.  To recognize that the contraband possessed by defendant is horrendous without finding that some punishment including imprisonment is the consequence of such possession fails to give any weight to the nature and circumstances of the crime in this case.

### 2.  **History and Characteristics and Needed Medical Care**

In § 3553(a), 'history and characteristics' is just half of one of the factors the Court is required to consider.  In the past, "history and characteristics" were the determent factor for the Court in deciding a sentence in this case in conjunction with its total discounting of the guideline range.  Given new health issues for defendant and his spouse, it appears to be the tail wagging the dog again.[3]  A defendant's health and age and a spouse's need for help with daily living skills are factors that may indicate a downward variance from the guidelines, but they do

---

[3]A sentence is substantively unreasonable if selected arbitrarily, based "on impermissible factors, fails to consider relevant sentencing factors, or *gives an unreasonable amount of weight to any pertinent factor.*"  United States v. Conatser, 514 F.3d 508, 520 (6th Cir. 2008), quoted in United States v. Robinson, 669 F.3d 767, 774 (6th Cir. 2012).

not give a defendant a 'free' crime, if you will, since there are other factors the court is mandated to consider.  Further, this defendant's health conditions are not uncommon; and there is no showing that they cannot be managed by the Bureau of Prisons. Courts usually deal with §3553(a)(2)(D)'s directive to consider health care needs by recommending a prison with a medical facility when appropriate.  A cardiologist's letter is presented herein that prison will be detrimental to defendant's health, but there is no indication that the cardiologist has any information regarding cardiac health care in the Bureau of Prisons.

Aside from defendant's arguments regarding his own health, the court is asked by defendant to consider the needs of his family.  Many defendants appear in court every day with more compelling family circumstances than defendant Bistline, including those parenting and providing financially for young children whose lives will be changed for decades by the absence of a parent.  Courts routinely opine that imprisonment always causes unavoidable hardship for families.  Other factors in this case make a sentence of no imprisonment unreasonable as the Sixth Circuit recognized.

Defendant adds new arguments at this re-sentencing including articles regarding the inability of the Bureau of Prisons to provide adequate medical care, to protect its inmates and to provide a stress-free environment.  If the Bureau of Prisons were

18

indeed routinely failing to provide medical care and to protect its inmates, then it is unlikely that a compassionate and knowledgeable judge would send anyone to such a system.  Indeed those arguments would be present to the same extent in every case before this court, yet defendants are sentenced to prison terms in the federal system and in this Court every day.[4]

An adult daughter provides new reasons that each adult child cannot adequately provide the daily care that their mother needs.  Given Mrs. Bistline's repeated falls in the bathroom and down the basement stairs while doing laundry, then defendant is not providing the level of care she needs either.  The family should already have been considering and seeking assisted living or the excellent community resources available in Knox County.[5]

---

[4]Defendant argues that Bistline is at high risk of abuse in prison, but United States v. Camscione, 591 F.3d 832, 834-35 (6th Cir. 2010) found that a concern that a defendant "'would be vulnerable to what happens to people accused of these kinds of criminal matters in the general population' is an improper sentencing consideration."  Further, "even if the Court could consider possible victimization in prison, [a defendant's] bare assertion he is likely to be victimized in prison does not take into account the Bureau of Prisons... thoughtful efforts to protect and provide for vulnerable inmates."  United States v. Rothwell, 847 F.Supp. 2d 1048, 1063 (E.D.TN 2012).

[5]For example, MOTA (Mid-Ohio Transit Authority), Mount Vernon Psychological Services, Interchurch Social Services, Independent Living Center of NCO, Inc., Ohio District 5 Area Agency on Aging, Inc., Station Break Senior Center (provides transportation too to grocery stores and drug stores), Kno-Ho-Co Health Services (includes Adult Day Care and health services), FISH (free transportation for medical appointments) to name a few.

Prison is not necessarily the issue for this family; it is the failure to recognize aging and health issues which should have been addressed already, particularly with this re-sentencing as a high probability in their future.  As <u>Rothwell</u> elegantly explained when faced with an argument that defendant's elderly parents relied on him to provide needed labor on the family farm:

> Moreover, it is difficult for the Court to determine a means of realistically addressing the fact Rothwell's parents rely on him.  Rothwell's availability to his parents would likely provide only a short term ameliorative and not permanent succor.

The same can be said here.  No family has easy answers regarding how to care for a parent when one spouse is no longer able to do so as a result of illness or death.  Defendant's arguments herein, if carried to their logical conclusion, are that an older, married person with health problems and family responsibilities should be allowed to commit crimes without fear of prison.  If Mr. Bistline had robbed a bank because his health was failing and money was tight, we would not even be having this discussion: the unspoken contention by defendant and the underpinning of the original sentence is that child pornography possession is not really a crime for which one should ever get prison time unless another crime -- child molestation or child pornography production -- is involved.  That is neither legally nor factually true.

Defendant has had an ideal life in most respects.  He has

20

more to lose than many defendants.  He also had many reasons not
to commit the crime in the first place.  Defendant was required
as a condition of supervised release to complete sex offender
treatment which he has done.[6]  These factors support an inference
that he would be unlikely to re-offend.  However, most of these
same factors make the commission of the crime in the first place
equally unlikely.  In sum, the United States finds that this part
of the first § 3553 factor supports a slight downward variation
from the guidelines.

**3.  The Statutory Purposes of 3553.**

> **(a) To Reflect the Seriousness of the Offense, to Promote
> Respect for the Law, and to Provide Just Punishment for the
> Offense.**

The guidelines themselves as well as the statutory sentences
available for child pornography offenses send a strong message
that Congress views the offense as grave and reflects public
concern.  Probation, in recommending a significant departure,
notes the seriousness of the offense, but then qualifies that by
stating "there is no information to suggest the defendant ever
harmed a child in any way."  Obviously, defendant's participation
in the market for child pornography does harm children.  It is
assumed, however, that the remark in the PSR was meant to refer

---

[6]Defendant did not seek any counseling on his own even
though approximately two years passed between the day of the
search and his guilty plea.

21

to the fact that there was no evidence that defendant himself had engaged in direct sexual abuse of a child.  There is also no information that defendant robbed a bank or sold drugs, but the absence of evidence of abuse, or of bank robbery or of drug sales is not a basis for a downward departure on a possession case. The lack of relevance of the comment undermines the PSI's recommendation of a significant variance.  Evidence of child abuse is relevant only in determining if defendant might qualify for 5 additional points under the guidelines for a pattern of abuse of a child or whether a higher sentence within the guidelines might be appropriate.  Its absence should never be a factor in a deviation or departure from the guidelines but merely a factor in support of a recommendation at the low end of the guidelines.  Certainly, the PSR's recommended deviation of 60% to 70% from the guideline sentence does not "promote respect for the law" when no reasoned decision for the recommendation is given.

Child pornography such as that sought out by defendant is the visual record of the crimes of rape and sexual abuse of very young children.  The prior one day sentence in this case sent the message to those still possessing child abuse materials that the federal courts do not view that as a serious offense.  The stark fact that seems to get ignored in this case is that for over two years a parent, grand parent and former teacher such as Mr. Bistline found sexual interest in material that almost everyone

else would find abhorrent.  He sought out the material in place
of his original quest for on-line pornography.  There is no
conclusion to draw except that he has a sexual interest in
children.  Defendant argues that he is not a pedophile, but that
is not an element of the crime nor a consideration under the
guidelines.

The guidelines require the court to consider an element that
is absent from defendant's analysis - punishment.  One of the
purposes of sentencing is indeed punishment for the crime.
Because possession of child pornography is a serious offense, it
should be met with a serious punishment. <u>United States v.</u>
<u>Bistline</u>, 665 F. 3d 758, 766 (6th Cir. 2012).  "Just punishment"
in this case involves some sentence of imprisonment; otherwise,
the Court has no lower sentence when faced with lesser violations
of the statute or less culpable defendants.  (See, e.g.,
<u>Rothwell,</u> 847 F.Supp. 2d 1048, where defendant had a low IQ, did
not use a computer and possessed no child pornography but merely
attempted to buy it by mail from an undercover officer and still
received a below guidelines sentence of 18 months imprisonment.)

### (b) To Afford Adequate Deterrence to Criminal Conduct

The sentence itself must provide adequate deterrence
specifically to defendant and generally to others.  Sentencing
close to the guidelines range will deter defendant from future
acts of seeking out child pornography, as well as deter other

23

potential defendants by sending a clear message: Individuals who engage in this criminal conduct in the Southern District of Ohio are going to face a prison sentence as envisioned by Congress and anticipated by the Sentencing Commission.

Logic "suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced." United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007).  "Young children were raped or molested in order to enable the production of the pornography" that Bistline consumed.  Id.  It is an abuse of discretion to fail to give that matter its proper weight.  See, United States v. Camiscione, 591 F.3d 823, 832 (6th Cir. 2010.) ("Camiscione II").

Defendant suggested at the first sentencing that the "humiliation of prosecution for an offense which invokes universal scorn has already resulted in substantial punishment and deterrence..." (Def's. Sent. Memo. I at 7).  However, it is the sentence itself that must provide the deterrence according to 18 U.S.C. § 3553(a)(2), and not the collateral consequences of prosecution.  The appellate court agreed and thus deterrence must be found in the sentence itself.  Bistline, 665 F. 3d at 766-67 (6th Cir. 2012). "General deterrence is crucial in the child pornography context[.]" Camiscione II, 591 F.3d at 834.  As to Bistline's original one day sentence and lengthy supervised

24

release, the appellate court said: "Suffice it to say that we do not see how Bistline's sentence would meaningfully deter him or anyone else." Id.

There is an element in sentencing that involves not only punishment for a criminal act, but that also sends the message to others so inclined that there will be punishment for this exact criminal act - possession of child pornography.  The sheer quantity and availability of child pornography on the Internet validates one's interest in it and normalizes extremely aberrant behavior.  Something has to counterbalance the enormous weight and influence of this material's availability.  A jail sentence is some part of that counterbalance.  No statistics can discover those who might find it on-line and immediately turn away for fear of a significant jail sentence.

Defendant argues that few of those convicted of possession of child pornography are later arrested for child sexual abuse.[7] Punishment for possession of child pornography is not a proxy in punishing potential future child molesters.  "To the extent a court determines a defendant poses a danger to the public for any

_____

[7]Given the age of the witnesses and the secrecy and shame surrounding the crime, it is amazing that there are any arrests for those crimes.  For example, of the 14 young child victims in just one video possessed by defendant, only three victims have been identified.  The other 11 victims and their abusers remain hidden despite this visual record of the crime and attempts by NCMEC and others to rescue those children through identification. See, Gov't. App. A, NCMEC Information.

reason,... that is an appropriate § 3553(a) consideration.  But unless there is something in the PSR or presented by the parties, the Court does not see how this [little likelihood of future child molestation] could ever play a significant consideration in a court's sentencing decision."  Rothwell, 847 F. Supp 2d at 1066, fn. 26.

### (c) To protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

As for protecting the public from further crimes of the defendant, it appears that defendant has not had access to a computer in his home for the last three years.  However, with browsing on smart phones and continually evolving devices, the Internet is ubiquitous.  Defendant has already completed a sex offender program.  Although there are mixed opinions on whether such programs are effective in the child pornography context, there is no information in the record that would indicate a high likelihood of defendant's re-offending.  This factor is in defendant's favor.

The United States has addressed medical care in depth in the context of "History and Characteristics" above.  While defendant has a number of ailments that appear to be controlled by medication, he still drives and helps his spouse.  There is no information that indicates that medical treatment in prison will

be a problem for this defendant.

   **4.  The kinds of sentences available and policy statements.**

   While the statutory sentence ranges from no imprisonment to
10 years of imprisonment, this case guidelines to the middle of
that range at 63 months for the low end of the guidelines.
Because defendant has already been on supervised release for
approximately three years, some consideration for a lower
sentence should counterbalance factors discussed above that would
indicate a higher sentence.  The United States, as noted, has
lowered its recommendation to 60 months imprisonment and only 5
years of supervised release.  Even if the Court disagrees with
the higher guidelines ranges for this crime which it clearly
does, there must be some proportionality in its sentencing for
the crime of child pornography possession.  The nature and
circumstances of this case are not the most minor circumstances
although they have been minimized in the past by the court.  As
the United States has explained previously herein, there are many
variations of cases much more minor than this one, including ones
that might not be prosecuted.  Here we have an educated, mature
adult with a loving family who nonetheless sought out this
contraband for several years.  He was not a one time or
incidental offender of lesser education, maturity, or
intelligence or one with emotional deficits unable to understand
the wrongfulness of the behavior.  We also have a person who was

27

not forthcoming with law enforcement[8] nor remorseful on the record about the victims in the images.  Given the facts of this case in the context of all possible violations of the statute, it is not a de minimis case as recognized by the appellate court who reviewed the record.  Thus, while a full range of sentences are available, the appropriate sentence includes some meaningful prison time.

**5.  The sentencing guidelines range**

Although the Sentencing Guidelines are now only advisory, they still "should be the starting point and the initial benchmark" for choosing a defendant's sentence.  Gall v. United States, 552 U.S. 38, 49 (2007).

> If the district court decides to impose a sentence outside the applicable guideline range, the court must 'ensure that the justification is sufficiently compelling to support the degree of the variance.  We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.  Gall, 552 U.S. at 50.

Bistline 665 F.2d at 761. Defendant's arguments to de-value the guidelines for child pornography are a major portion of his contention again at re-sentencing.  The United States incorporates herein its Supplemental Sentencing Memorandum (R. 19) filed at the time of the second sentencing hearing in this case and its brief on appeal.  It further references the

---

[8]Note that defendant only admitted having pornography, not child pornography, and then made no further statement to law enforcement.

28

discussion in Bistline at 761-764 regarding the "formidable task" required for a Court to disagree with a guideline on policy grounds.

If each guideline received the scrutiny that has been lavished on the child pornography guidelines, it is doubtful that any of them have an unblemished history.  We could spend the rest of each sentencing hearing arguing about arcane points of legislative history and each historical amendment of a guideline. The United States understands that for the last two years, the Sentencing Commission has been considering a change to this guideline with much study and testimony but no change has yet been forthcoming.  Accordingly, the United States supports the guidelines as they exist with the understanding that there are a number of sentences below the range.  Taking this guideline as a starting point, however, the United States concludes, as did the appellate court, that imposing a sentence of no imprisonment is unreasonable and insupportable for this case.

### 6.  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

The PSR recommendation and the defendant's request do not avoid unwarranted sentence disparities among defendants.  If the public defender's own statistical analyses are accurate, in 2011, over half of defendants in the Sixth Circuit received sentences within the 2G2.2 guidelines or within a government sponsored

reduction. (see Def's App. 1, Table 1).  Only 3 of 146 defendants with a criminal history I category under that guideline (or 2%) received no imprisonment.  (Id. at Table 3.)  The table does not indicate whether any of those 3 cases were a result in whole or in part of a government request. (Id.)  The vast majority (83%) received sentences of over two years.  (Id.)  While there will always be 'outlier' cases for all crimes in bare statistics in the post-Booker regime of sentencing, those cases are not the norm.  Further, those cases are the ones most likely to receive scrutiny and reversal as involving an unwarranted sentencing disparity.  This case is such a case.  Cases that may support a significant variance include, for example, those where defendant possessed a limited amount of child pornography or no hard core material; where the victims in the images are all older teens or closer in age to the defendant; where the collection, while large, was the result of one instance of receipt; or where it is documented that a defendant is not of average intelligence or suffers from autism or other developmental issues.  If defendant Bistline were to receive no or minimal incarceration, there is no room for less egregious cases on a reasoned and fair scale of sentencing justice.  The result is then unwarranted disparity as the Sixth Circuit has already held in this case.

### Victim Impact Statement

One of the known child victims in this case has a victim

impact statement on file with the Department of Justice and requests that it be read at sentencing.  Her mother and step-father have also filed statements which they request be read at sentencing.  Because the victim's statement has been read in the past, the United States simply requests that the Court include it in the record; but since the parents' statements were not read previously, the United States requests that they be read at this sentencing.

**CONCLUSION**

For all of the foregoing reasons, the United States submits that a five year sentence with five years of supervised release is appropriate in this case.

Respectfully submitted,

CARTER M. STEWART
United States Attorney

s/Deborah A. Solove
DEBORAH A. SOLOVE (0024552)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
(614) 469-5715
Fax: (614) 469-5653
Deborah.Solove @usdoj.gov

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing United States Sentencing Memorandum has been served on Jonathon Tyack, attorney for defendant, Richard Bistline on this 29th day of November, 2012, by virtue of its electronic filing this date.


s/Deborah A. Solove
Deborah A. Solove,
Assistant United States Attorney